IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN R. GREISIGER** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 22-591** |
| | : | |
| **HIGH SWARTZ LLP, ET AL.** | : | |

**MCHUGH, J.**                                                                                                       **JUNE 21, 2022**

**MEMORANDUM**

This is an action arising out of a family dispute over an estate.[1] The plaintiff alleges that his sister conspired with their mother's lawyer and the law firm representing her to structure their mother's estate in a way that undermined her intent to divide her assets among equally her three children. He contends that he is a third-party beneficiary of his mother's contract with counsel, entitled to sue for counsel's failure to carry out her intent. He also contends that his mother's attorney, the law firm, and his sister tortiously interfered with his expectancy and inheritance. The claims Plaintiff asserts find no support in Pennsylvania law. Claims against attorneys brought by disappointed beneficiaries of a will are limited to cases where an attorney's error has prevented the literal terms of the will from being enforced. Liability for tortious interference with an inheritance or expectancy does not extend to *inter vivos* transfers. I am therefore compelled to grant Defendants' Motion to Dismiss.

I. **Factual Background**

Plaintiff John R. Greisiger is the son of Ruth Greisiger, who died on September 10, 2021. Compl. ¶¶ 8,9, ECF 1. Plaintiff alleges that his mother intended to distribute her assets equally to

---

[1]Related litigation is pending in state court. From a review of the Complaint here, it appears that Plaintiff's strategic goal is to pursue a remedy that does not require a direct challenge to the validity of the will, which on its face bequeaths him an equal share with his siblings.

all three of her children, Judith Loughlin (Defendant), Arthur Greisiger, and John Greisiger, as she had informed all of them before her death. *Id.* ¶ 13, 14.  Upon her death, however, Plaintiff alleges that her children did not receive equal shares. *Id.* ¶ 52.  Plaintiff does not appear to allege that the will itself treated them differently, but rather that the corpus of the estate had shrunk because Plaintiff's sister, Defendant Loughlin, conspired with Ms. Greisiger's attorneys to make a series of *inter vivos* transfers that significantly reduced the estate's value, depriving Plaintiff of his expectancy interest in the estate. *Id.* ¶¶ 34,52.

Sometime before May 2019, Ms. Greisiger discharged her long-time lawyer. *Id.* ¶ 19.  Ms. Loughlin is alleged to have "furtive[ly] search[ed]" for a new attorney for her mother, visiting several law firms with her mother, before eventually securing the services of High Swartz and attorney Kathleen Thomas, whom Ms. Greisiger retained to rearrange her assets and write a new will.[2]  *Id.* ¶¶ 19, 22-24, 73.  Plaintiff maintains that as of the time Ms. Greisiger entered into this new attorney-client relationship, she intended that her assets be equally distributed to her children, an intention discussed by Attorney Thomas and Defendant Loughlin and purportedly documented in Ms. Greisiger's prior writings, wills, and directions. *Id.* ¶¶30, 72.

A new will for Ms. Greisiger was drafted by Attorney Thomas, working under the "direction and control" of High Swartz, which was executed on May 7, 2019. *Id.* ¶¶ 26, 27. Plaintiff was named as a beneficiary of that will as he had been in all prior wills. *Id.* ¶ 47. The will provided that the residue of Ms. Griesiger's estate would be divided equally among her three children, including Plaintiff.   Mem. of Law, Mot. to Dismiss at 8, ECF 8-5.  Attorney Thomas also created instruments to disseminate non-probate assets including joint accounts, investments,

---

[2] It is not clear from the Complaint whether Plaintiff is alleging that Ms. Griesiger herself wanted to seek new representation or whether a search for new counsel was instigated by Ms. Loughlin.

and paid on death accounts which were transferred or reassigned while Ms. Griesiger was living. *Id.* ¶¶ 47, 63.

Around this time, Ms. Griesiger required physical and mental assistance, and Ms. Loughlin was given power of attorney.[3] *Id.* ¶¶ 49, 50. Pursuant to her power of attorney, Loughlin allegedly "locked" Plaintiff out of his management position at a family business, hired her own children and husband to manage operations, and then later closed the business. *Id.* ¶ 74. She also purportedly solicited and obtained large loans from Ms. Griesiger for her own children. *Id.* ¶ 74. Plaintiff alleges that Attorney Thomas and High Swartz committed these acts in concert with Ms. Loughlin to Plaintiff's detriment. *Id.* ¶ 63

Plaintiff alleges that because assets were transferred and disseminated before his mother's death and the estate was diminished, he was deprived of an equal share of Ms. Griesiger's assets. *Id.* ¶ 60.

## II. Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

Plaintiff brings a breach of contract claim against High Swartz and Attorney Thomas, contending that he was a third-party beneficiary of their contract with his mother, and therefore owed a duty as one of her heirs, which was breached when his mother's total assets were not distributed equally. Compl. ¶ 49. He also brings a claim against High Swartz, Thomas, and

---

[3] It is not clear exactly when Loughlin was given power of attorney, but the Complaint alleges that Ms. Griesiger was in poor physical and mental health and required extensive care and treatment as of May, 2019. *See* Compl. ¶¶ 17-18, 51.

Loughlin for tortious interference with his inheritance and expectancy interest in his mother's estate. *Id.* ¶¶ 64, 67. Finally, Plaintiff claims that High Swartz, Thomas and Loughlin acted in concert to tortiously interfere with his expectancy. *Id.* ¶¶ 70-79. He seeks damages equal to the value of one-third of his mother's non-probate estate. The attorney and law firm defendants have moved to dismiss, ECF 8, which was joined by Loughlin, ECF 10.

> I. <u>Plaintiff lacks standing to assert claims under the contracts between his mother and her attorneys.</u>

The contract claims against Attorney Thomas and High Swartz are set forth in Counts I and II of the complaint. Defendants contend that given the nature of his claims, Plaintiff lacks standing because he cannot be considered a third-party beneficiary of their contract to provide legal services to his mother. Defendants' interpretation of Pennsylvania law is correct.

The traditional rule in Pennsylvania was that clients could sue attorneys for malpractice under both tort and contract theories, but a third-party beneficiary to an attorney-client relationship could not for lack of privity. In 1983, in *Guy v. Leiderbach*, the Pennsylvania Supreme Court adopted an exception to this rule, allowing certain narrowly defined claims by the intended beneficiaries of a will. 459 A.2d 744, 751 (1983). Specifically, the Court concluded that "persons who are named beneficiaries under a will and who lose their intended legacy due to the failure of an attorney to properly draft the instrument should not be left without recourse or remedy…." *Id.* at 752. To determine whether a third-party beneficiary of a will shall prevail, the Pennsylvania Supreme Court established a two-part test: "(1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and (2) the performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the

promisee intends to give the beneficiary the benefit of the promised performance."[4]  *Id.* at 751-52.  In limiting the scope of such a claim, the Court defined the relevant evidence narrowly: "[t]he circumstances which clearly indicate the testator's intent to benefit a named legatee are his arrangements with the attorney and the text of his will." *Id.* at 751-52 (internal citations omitted) (quoting from the Restatement (Second) of Contracts § 302 (1979)).  In practical terms, claims by beneficiaries permitted by *Guy* are limited to those arising out of drafting errors or a lack of technical skill that prevents the terms of the will from having legal effect.

There is no dispute that Plaintiff is a named legatee, and thus satisfies the first prong.  But his claim falls outside the scope of the second prong.  *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 808 (Pa. Super 2007) is instructive. There, the Pennsylvania Superior Court reasoned that even where appellants were explicitly named in the will and thus satisfied the first prong of *Guy*, they nonetheless did not have standing where they did "*not* claim that they received a legacy less than that bequeathed to them according to the text of...[the] will [but instead claimed] only that the testator's true intent was to bequeath them a *greater* legacy than that afforded by the will." *Id.*  In so holding, the Superior Court reasoned that because appellants "did not plead that they lost their intended legacy as provided by the text of [the] will," they "did not fall into the narrow class of legatees upon whom standing is conferred under *Guy* to bring suit for breach of contract against the testator's attorney." *Id.; Accord, Warner v. Winter*, No. 1:20-CV-496, 2021 WL 808754, at *2-4 (M.D. Pa. Mar. 3, 2021).

The Pennsylvania Supreme Court returned to this issue in *Estate of Agnew v. Ross*, 152 A.3d 247, 262-63 (Pa. 2017).  There, a will provided that the residue on an estate would flow to a

---

[4] The Court's use of the term "promisee" in this context is confusing.  Elsewhere in the opinion it makes clear that the term is being used interchangeably with "testator."

5

trust.  The trust was amended over several years' time, and a final amendment that would have expanded the rights of certain beneficiaries was drafted but not presented for signature, which the attorney acknowledged as "a mistake."  *Id.* at 252.  The client died without signing the amendment, leading the beneficiaries to sue the attorney.  The Court reaffirmed the narrow scope of *Guy,* and specifically held that in the absence of a signed instrument conferring rights on the parties bringing suit, there was no standing.  *Id.* at 259.  In reaching this result, the Court stated that considerations of public policy weighed strongly against allowing the use of extrinsic evidence to prove the standing of a third-party beneficiary in a legal malpractice case.  *Id.* at 263.

      This precedent is fatal to Plaintiff's claims here.  He alleges that decedent's true intent was to distribute her estate equally among her children, but he received less than an equal share of her assets because her lawyer restructured her estate and removed certain assets from the May 7, 2019 will.  Like the plaintiffs in *Hess,* Mr. Greisiger "does not directly attack the validity" of the will.  *See Hess*, 925 A.2d at 808.  In fact, he specifically states that he is not challenging the will as a product of undue influence, or because of a lack of testamentary capacity, or fraud.  Compl. ¶32.  And as in *Hess*, he does not claim that the property he received under the will was less than what the will itself provided.  *Id*.  Nor does he claim that he lost his intended legacy due to the attorney's failure to properly draft the will.  *Guy*, 459 A.2d at 752.  Instead, Plaintiff's claim is premised on his belief that decedent intended for him to receive more property than he did.  And although Plaintiff alleges that his mother made this intention clear by telling her children she wanted them to receive her property in equal shares, the Pennsylvania Supreme Court has held that it is only the will that "clearly indicate[s] the testator's intent."  *Id.* at 752.  To hold otherwise would be to allow "virtually any legatees, disappointed in their share of the testator's bequests, [to] mount an indirect attack on the will by bringing suit against the testator's attorney, claiming that the will's text did

6

not truly reflect the testator's intent and thus that the attorney breached his or her contract with the testator to benefit the (disappointed) legatees." *Hess*, 925 A.2d at 808.  And it bears mention that the extrinsic evidence in *Estate of Agnew*—a draft of an amendment to the trust that counsel admitted to having drafted pursuant to his client's direct instructions—is far more compelling than the extrinsic evidence here, but the Court there nonetheless declined to confer standing.

II. <u>Pennsylvania law does not support Plaintiff's claims for tortious interference with an inheritance or expectancy.</u>

Section 774B of the Restatement (Second) of Torts defines a cause of action for intentional interference with an inheritance or gift as: "[o]ne who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received."  As to a potential inheritance, Pennsylvania has under narrow circumstances recognized such a cause of action.[5] *Fiedler v. Spencer*, 231 A.3d 831, 836 (Pa. Super 2020), *allocatur* denied, 241 A.3d 355 (Pa. 2020); *Hollywood v. First Nat. Bank of Palmerton*, 859 A.2d 472 (Pa. Super. 2004)  In contrast, "Pennsylvania has not expanded the doctrine to include *inter vivos* transfers as contemplated by the Restatement." *Fiedler*, 231 A.3d at 837.

Assuming as true the facts of the Complaint, Plaintiff cannot sustain an action for intentional interference with an inheritance or expectancy under Pennsylvania law.  Plaintiff does not allege that his mother communicated an intent to change her will to provide some benefit to Plaintiff or that Attorney Thomas prevented the execution of such changes.  Instead, Plaintiff has alleged that Attorney Thomas created a new will, but it did not reflect his mother's true intent

---

[5] Tortious interference with an inheritance requires proof of the following elements: "(1) the testator indicated an intent to change her will to provide a described benefit to the plaintiff; (2) the defendant used fraud, misrepresentation, or undue influence to prevent execution of the intended will; (3) the defendant was successful in preventing the execution of a new will; and (4) but for the defendant's conduct, the testator would have changed her will." *Fiedler,* 231 A.3d at 836.

7

because he "transferred, caused to be transferred, or reassigned assets during Ruth[] [Greisiger's] lifetime which defeated Ruth's stated objective of equal distribution of her assets to her children." Compl. ¶ 63. Instead of challenging the terms of the will itself, Plaintiff is challenging transactions that occurred during his mother's lifetime, complaining that "assets [were] removed from the prior will and disseminated outside" of it. *Id.* ¶ 28. Given that Pennsylvania does not recognize a cause of action for interference with *inter vivos* transfers, Plaintiff has failed to state a claim upon which relief can be granted.[6]

Plaintiff's claim for concert of action by High Swartz, Attorney Thomas, and Loughlin then fails because Plaintiff has failed to state a claim for the underlying claim of tortious interference with an inheritance or expectancy.[7] *Fiedler, supra,* 231 A.3d at 838-39. As a result, this claim must also be dismissed.[8]

### IV. Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss will be granted. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge

---

[6] In his response to Defendants' Motion to Dismiss, Plaintiff cites an email from his brother expressing doubts about the legitimacy of the will based upon the number of attorneys visited before the final revision. Plaintiff's Resp. at 1, ECF 14. I may not consider this allegation as it was not included in the Complaint. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc*., 836 F.2d 173, 181 (3d Cir. 1988) (internal citation omitted). But even if such an allegation were properly pleaded, it appears to be directed at whether the will was a product of undue influence or fraud, which Plaintiff has expressly stated is not a claim he is pursing in this action.

[7] "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Goldstein v. Phillip Morris, Inc*., 854 A.2d 585, 590 (Pa. Super. 2004)

[8] I need not consider Defendants' argument that Plaintiff's claims must be dismissed due to the probate exception to diversity jurisdiction or under the abstention doctrine as I have dismissed the claims on other grounds.